**UNITED STATES of America, Plaintiff,**

v.

**Reinaldo RIVERA–RENTAS, Defendant.**

Cr. No. 93–178 (CC).

United States District Court,
D. Puerto Rico.

Sept. 15, 1993.

---

**4.** Excepting #177 which was filed under seal.

### REPORT AND RECOMMENDATION

CASTELLANOS, United States Magistrate Judge.

At the hearing to suppress defendant's statements held on September 8, 1993, testified Postal Inspector José R. Cotés. He participated in two interviews with above captioned defendant which took place on November 10, 1992 and May 28, 1993, at their offices located on Kennedy Avenue. Defendant was accompanied on both occasions by the Union's shop steward, Mr. Francisco Mages.

Inspector Cotés testified that he read the *Miranda* rights to Mr. Rivera–Rentas both times providing the written form wherein he acknowledged the warnings and signed the waiver of rights part. Neither the defendant nor the Union's representative expressed that they had any questions, reservations or objections. He observed the defendant to be coherent.

A first interview with defendant to take some handwriting exemplars was held on October 27, 1992, at the Postal Inspector's Office in Ponce, before Inspectors Barraga and Peñón. At the interview of November 10, 1992, which lasted approximately three hours, Inspector Cotés accompanied by Inspector Vivoni, took other exemplars. Mr. Rivera–Rentas was not observed overly nervous although he was indeed concerned. During the last interview of May 28, 1993, some questions were asked in regard with the stolen checks that had been deposited in the account of one Batista, friend of Rivera–Rentas. The handwritten notes of the interview taken by Inspector Cotés were verified by the shop steward by placing his signature. Rivera–Rentas subsequently provided a written statement which was not consistent with his previous verbal admissions. Although Inspector Cotés assisted in providing the number of the corresponding checks and these were shown to Rivera–Rentas, he did not dictate to defendant the contents of said statement. Afterwards, defendant requested he assistance of counsel upon which proceedings were stopped. Rivera–Rentas asked to go to lunch. Since the agent had all necessary information to file charges, the Assistant United States Attorney was called to seek authorization for a complaint. When Mr. Rivera–Rentas came back from lunch he was placed under arrest. No duress, coercion or intimidation was used against defendant. During the interview there was no display of weapons.

Mr. Francisco Mage–Figueroa, the Union's shop steward for the National Association of Letter Carriers for all towns, except the metropolitan area, testified that he accompanied defendant during the above mentioned interviews. This defense witness testified he was called by Mr. Rivera–Rentas, who was with the Postal Inspectors at the Ponce office and wanted him to be present. After being authorized to leave his job, he went to the site where Inspector Barraga provided English/Spanish warning of rights form and told both Rivera–Rentas and the witness to read it. Mr. Mage asked the inspectors present if Mr. Rivera–Rentas could stop talking at any time if he was incriminating himself and was answered affirmatively. Mr. Mage was, however, instructed not to say anything nor to intervene during the interviews.

On the second interview defendant and Mr. Mage came to the General Post Office Building on Roosevelt Avenue, Hato Rey, and after calling to find the exact location Postal Inspectors came to show them the way. They followed the Inspectors to the Kennedy Avenue location. Mr. Mage was left at the lobby for about one hour while Mr. Rivera–Rentas was inside. Once he entered the room they were given the warning form for

Rivera–Rentas to read and to sign. He noticed that Mr. Rivera–Rentas was asked to sign numerous cards, writing exemplars. He perceived that Rivera–Rentas was nervous because he was requested to write smaller since he would get out off the line and had to continue writing down his name on the next line. Rivera–Rentas at times asked him what would he think about the matter.

At the third interview of May 28, 1993, defendant and Mr. Mage showed up at the Roosevelt location and again followed the Inspector to the place. This time he had to wait about half an hour in the lobby and once he entered the small interview room they sat opposite to the Inspectors. Inspector Cotés gave to both the warning form to read. Rivera–Rentas was asked to sign. He was told that if he was waiving his rights he did not need a lawyer. The Inspector was dictating the number of the checks and the names of the person to whom the checks were made. After Rivera–Rentas gave the written statement, some additional checks not therein mentioned were displayed to him by Inspector Barraga. At that juncture Mr. Mage told him not to say anything more and to get an attorney. The Inspectors said there was no problem. Subsequently, Rivera–Rentas was placed under arrest. Mr. Mage accompanied defendant to the Federal Building for initial judicial proceedings.

■ Defendant seeks to suppress statements, now subject of a superseding indictment, on grounds that the admissions were involuntary and unintelligently made and obtained after he had requested an attorney. The testimonies of both the government's witness and defense's witness have shown otherwise. There was no duress, coercion or showing as to the involuntary nature of the statements. There was no evidence to contravene the fact that written admonishments such as Exhibit 1,[1] were provided to defendant in the Spanish language and he signed the admonishment, as well as the waiver of rights portions.

In addition, the evidence established that the request for counsel was made after the written statement had already been provided

and the interview was then ceased. Defendant had then the opportunity to leave the interview room to get lunch and was arrested upon his return after Postal Inspector's consultation with the prosecutor on duty.

Defendant knew since the first interview that he was subject of an investigation for which reasons *Miranda* warnings were provided prior to questioning. Still, defendant did not confront a custodial setting. *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985). Rivera–Rentas appeared before Postal Inspectors on his own, accompanied by his selected Union's delegate. Previous interviews to obtain from him handwriting exemplars had made defendant acquainted with the procedures. He had been able to leave the site of the interview and take a lunch breach on two different occasions, including the date of the statements at issue. The Inspectors did not show force, duress, coercion nor displayed weapons. See *Rethinking Custodial Interrogation,* 28 Am.Crim.L.Rev. 1 (1991).

■ In situations where a formal arrest is not acknowledged to have taken place, the events that transpired during the events should be carefully examined. Courts have weighed the degree of intrusion, the amount of force used and the extent the detained person's freedom was restrained. The most acceptable test is whether a reasonable person under the circumstances would have considered himself under arrest. *Dunaway v. New York,* 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979). See *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985); *Hayes v. Florida,* 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985). In the present case defendant appeared for purposes of producing handwriting exemplars and interview, accompanied by the Union's delegate, to the General Post Office in Roosevelt Avenue. They followed the agents to the site of the interview freely, was never handcuffed and was free to leave, which in fact he did to have lunch.

■ The evidence also established proper admonishment was given and written waiver form obtained. *Miranda v. Arizona,*

---

**1.** Exhibit 1 refers to the first interview, October 27, 1992.

384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Statements that are knowing and voluntary, without duress or coercion, are not subject to suppression. *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *Jackson v. Denno,* 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). A waiver of constitutional rights, which under the totality of the circumstances reveals an uncoerced choice and understanding, is considered voluntary.

The voluntariness of defendant's statements was established herein by preponderance of the evidence. *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972). The evidence presented at the hearing did not disclose either any coercion, duress or undue pressure on defendant. "Coercive Police activity is a necessary predicate to the finding that a confession is not voluntary." *Colorado v. Connelly,* 479 U.S. 157, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).

On the issue of right to counsel, once a defendant invokes such rights, law enforcement agents have to "scrupulously honor" defendant's position, should stop interrogation and statements obtained are not allowed unless there is a clear showing that subsequently it was the defendant the one who initiated further communication upon waiver of previously asserted rights. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The testimonies of both witnesses were consistent as to when defendant requested assistance of counsel. Having reviewed he Postal Inspectors' conduct after Rivera–Rentas exercised his right to counsel, there is clear indication that they "scrupulously honor" his request. Under *Michigan v. Mosley,* 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975), regardless of the prior voluntariness discussion, defendant's oral and written statements preceded his claim for counsel. See also *United States v. Barone,* 968 F.2d 1378 (1st Cir.1992).

Therefore, it is recommended that the motion to suppress BE DENIED.

IT IS SO RECOMMENDED.

The parties have ten (10) days to file any objections to this report and recommendation. Failure to file the same within the specified time waives the right to appeal this order. *United States v. Valencia,* 792 F.2d 4 (1st Cir.1986).

IT IS SO ORDERED.